1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARTHA COULBOURN,

11          Plaintiff,                    No. CIV S-07-0095 GGH

12      vs.

13
     MICHAEL J. ASTRUE,                   ORDER
14   Commissioner of
     Social Security,
15
            Defendant.
16   _____/

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")

19   under Title II of the Social Security Act ("Act").[1]  For the reasons that follow, plaintiff's Motion

20   for Summary Judgment or Remand is DENIED, the Commissioner's Cross Motion for Summary

21   Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

22   BACKGROUND

23          Plaintiff, born July 11, 1947, applied on June 9, 2004 for disability insurance

24   benefits.  (Tr. at 44.)  Plaintiff alleged she was unable to work since August 22, 2002, due to

25   _____

26          [1]  The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed
     before a magistrate judge).

                                          1

arthritis in back, right leg and hip, and sciatic nerve problem.  (Tr. at 44, 54.)  In a decision dated March 23, 2006, ALJ Antonio Acevedo-Torres determined plaintiff was not disabled.  The ALJ made the following findings:[2]

> 1.  The claimant meets insured status requirements of the Social Security Act through the date of this decision.
>
> 2.  The claimant has not engaged in substantial gainful activity at any time after June 3, 2004 (20 CFR 404.1520(b) and 404.1571 et seq.).
>
> 3.  The claimant has the following severe impairments: degenerative disc disease of the lumbosacral spine, sciatica, fibromyalgia, and obesity (20 CFR § 404.1520(c)).
>
> 4.  The claimant does not have an impairment that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and the other sedentary criteria are met (20 CFR 416.967).

6.  The claimant is capable of performing past relevant work as a long distance operator (communications) and telemarketer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR § 404.1565).

7.  The claimant has not been under a "disability" as defined in the Social Security Act, from August 22, 2002 through the date of this decision (20 CFR § 404.1520(f)).

(Tr. at 20.)

The parties have made this case more confusing than it had to be through their omissions, and plaintiff can be credited with the bulk of the confusion through her misplaced argument regarding new evidence. In her motion for summary judgment, the only time plaintiff's counsel mentioned that she was awarded benefits on March 17, 2007, was one sentence buried in the "summary of administrative proceedings" section of her brief, which the court failed to notice at first. Furthermore, this sentence cites a declaration of Jonathon Hendricks as being attached, but there is no such declaration on file. The decision itself was only attached as an exhibit to the declaration of Martha Coulbourn regarding the onset date of her disability and a list of treating sources. Nowhere in her declaration did plaintiff state that she was awarded benefits or that attached to her declaration was a notice of entitlement to benefits. In fact, the entitlement to benefits was not mentioned at all, and therefore not authenticated. Nor did plaintiff's counsel refer to this declaration or exhibit in the motion for summary judgment. Therefore, the court did not come across this notice until recently. Defendant contributed to the problem by failing to mention the award of benefits entirely in its cross-motion. In fact, defendant's Errata, filed

3

1  September 24, 2007, admits to this material omission by explaining that defendant had no intent

2  "to mislead the court."  Defendant's Errata refers to the notice of entitlement of benefits as

3  attached as "Plaintiff's Exhibit 1."  The court still did not locate it in any of the exhibits attached

4  to plaintiff's motion.  Therefore, when plaintiff raised the issue of new evidence in her motion,

5  referring in part to records post-dating the disability date, the court, without having discovered

6  the notice of entitlement, was naturally led to believe that all time periods were at issue.  As a

7  result, the court ordered submission of updated medical records in order to determine the

8  significance of the new evidence and to aid in the determination of this issue.  After this order,

9  the court discovered Defendant's Errata and ordered a submission regarding the date of the

10  disability award.  Plaintiff's effort to raise the issue of new evidence was confusing as it appeared

11  to have no relevance based on the previous finding of disability as of March 24, 2006, and only

12  served to delay the determination of her case.

13       Having now received a copy of the notice of entitlement to benefits, the court

14  issues the following order based on a claim of disability beginning August 22, 2002[3] and ending

15  on March 24, 2006, the date on which plaintiff was found to be disabled. (Tr. at 44; Reagans'

16  Decl., filed April 11, 2008.)  Therefore, the issues will be addressed only insofar as they apply to

17  this period.

18  ISSUES PRESENTED

19       Plaintiff has raised the following issues: A.  Whether the ALJ and the Appeals

20  Council Improperly Rejected the Diagnosis of Plaintiff's Treating Physician; B.  Whether the

21  ALJ Failed to Credit Plaintiff's Statements Regarding Pain and Functional Limitations; and C.

22  Whether Plaintiff's New Evidence Should be Considered.

23  \\\\\

24

25       [3]  Plaintiff elsewhere claims she has been disabled since January, 2003, and that she has
    not worked since June 3, 2004 as a result of her disability.  Pl.'s Resp., filed April 7, 2008;
26  Coulbourn Decl., filed July 2, 2007, at ¶ 3.

4

1  LEGAL STANDARDS

2          The court reviews the Commissioner's decision to determine whether (1) it is

3  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

5  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

6  Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

7  accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

8  1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

9  (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

10 testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

11 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

12 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13 Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

14 ANALYSIS

15        A.  Whether the ALJ and the Appeals Council Improperly Rejected the Diagnosis of

16 Plaintiff's Treating Physician[4]

17          Plaintiff claims that the ALJ erred in rejecting her treating doctor's opinion.[5]  The

18 weight given to medical opinions depends in part on whether they are proffered by treating,

19 examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th

20

21        [4] Since the Appeals Council denied review, the decision of the ALJ is the final decision
   of the Secretary.  Decisions of the Appeals Council refusing to review an ALJ's decision on the
22 merits because the issues raised do not meet the requirement for review on the merits are not
   final decisions; in such cases the ALJ's decision is the final decision of the Secretary.  O'Dell v.
23 Shalala, 44 F.3d 855, 858 (10th Cir. 1994); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.
   1992); Russell v. Brown, 856 F.2d 81, 83-84 (9th Cir. 1988).  Therefore, the issue raised by
24 plaintiff is addressed as it pertains to the ALJ's decision only.

25        [5] Although plaintiff never mentions Dr. Hicks by name, she refers specifically to his
   records.  The ALJ also rejected Dr. Hassan's opinion, but he appears to have been an
26 independent medical examiner.  (Tr. at 505.)

Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).[6]  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons.  <u>Lester</u> , 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons.  <u>Lester</u>, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund v. Massanari</u>, 253 F.3d 1152 (9th Cir. 2001),[7] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

---

[6]  The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  <u>See</u> 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  <u>Id.</u>  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  <u>See</u> 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

[7]  The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1    Plaintiff points to the December 20, 2005 opinion of Dr. Hicks, a treating

2    physician, wherein he states that plaintiff was functionally limited from sitting more than thirty

3    minutes, standing more than fifteen minutes, and carrying more than five pounds and carrying

4    that amount for only a short time.  He also precluded her from climbing stairs, stooping,

5    squatting, and bending.  He also expressed his concern about plaintiff's large dosage of opiates to

6    control her extremely debilitating pain.  (Tr. at 332.)  Plaintiff claims that the ALJ improperly

7    dismissed this report as addressing plaintiff's upper extremity complaints.  The ALJ rejected

8    what he termed the extreme limitations imposed by this doctor because they were not supported

9    by his own treatment records.  (Id. at 18.)  The ALJ gave a lengthy explanation:

10           The record shows that the claimant has experienced back pain for
             which she has received only conservative treatment of medication.
11           The clinical findings show muscle tenderness and some limited
             motion, but no true weakness or sensation changes.  At times,
12           reflexes were diminished but they were always symmetrical.
             Beginning June 2003, the claimant had some increased back pain,
13           and Dr. Hicks reported positive straight-leg raising in September
             2004.  However, treatment records from Dr. Hicks and the
14           MedClinic end in January 2005.  Dr. Hicks completed statements
             after that time saying that the claimant continued to be disabled
15           due to pain, but he did not provide treatment records to show
             continued treatment or more aggressive measures to control the
16           claimant's pain.  It is also noted that Dr. Hicks assessed extreme
             manipulative limitations which are totally unwarranted.  There is
17           no evidence of an upper extremity impairment, and the claimant
             has not even alleged limitations involving the upper extremities.

18

19   (Id. at 18.)

20           Contrary to plaintiff's claim, the ALJ discussed both the effects of her back

21   problems and her upper extremities.  His rejection was complete in addressing both the

22   limitations on sitting, standing, and carrying, as addressed in the letter dated December 20, 2005,

23   (tr. at 332), as well as manipulative limitations imposed by Dr. Hicks in a multiple impairment

24   questionnaire dated August 22, 2005.  (Tr. at 312-19.)  This questionnaire limited plaintiff both

25   in sitting, standing, walking and lifting, and also in fine finger and hand manipulation, including

26   grasping, twisting and turning objects, wherein he found her to be markedly limited.  (Id. at 315,

                                                7

316.)  The ALJ separately addressed this questionnaire, rejecting it because although it was
dated August, 2005, the record contained no treatment records after January, 2005.  (Tr. at 17.)
Further, he noted that Dr. Hicks did not explain these marked limitations in the upper extremities
which would essentially preclude their use.  (Id.)   The questionnaire itself states that the basis for
these limitations is lumbar stenosis with severe radicular sciatic pain which affects the low back
and legs.  (Id. at 312, 313.)  It does not mention the findings supporting limitations in finger and
hand manipulation.

        The only reason for rejecting Dr. Hicks with which the court takes possible issue
is the ALJ's rejection of the questionnaire in part because it was dated August, 2005, despite the
lack of treatment records by the physician after January, 2005.  (Tr. at 199-274.)  The fact that a
report was prepared some time after the long term treatment relationship had passed does not tell
much, in and of itself, about the value of the observations.  For example, if a patient had a broken
back, which had been treated extensively but had not been successfully repaired, a doctor's
observations about that condition even stated sometime after the last visit would be valuable
because it would not be likely that the condition would have changed for the better during the
period of time in which it took to acquire the doctor's observations/reports.  Rather, one must
look at the substance of the report, the type of injury in question, the treatments received, and the
like to acquire a valid judgment on the doctor's report.  This reason for rejection is not valid as
Dr. Hicks would be familiar with plaintiff's condition six months after he last treated her, and
there is no evidence that her condition had changed significantly in any way during that interval
which would warrant discrediting his opinion for this reason.[8]

        The ALJ also relied on other evidence to support his findings.  Consultant Dr.
Turkot examined plaintiff on November 26, 2005, and reviewed her medical records.  She

_____

[8] Plaintiff did submit later records from Dr. Hicks to the Appeals Council and they are
now part of the record.  (Tr. at 513-563.)  Plaintiff has also submitted new evidence which
includes treating notes by Dr. Hicks, but all of these records were not before the ALJ so his
reasoning cannot be faulted.  They will be discussed in a later section *infra*.

1  diagnosed arthralgia in the low back and right hip, hypertension, hypothyroidism, and obesity.

2  (Tr. at 326.)  She noted that although plaintiff was prescribed numerous medications, she took

3  narcotic medications three times a day when she was advised to take them only occasionally, but

4  was noncompliant with other medications including those for hypertension, hypothyroidism, and

5  acid reflux (Aciphex).  (Tr. at 323, 326.)   Dr. Turkot also noted that plaintiff was not cooperative

6  during the exam, and gave a very poor effort in performing grip strength.  (Id. at 324, 325.)  She

7  also refused to do crouching, kneeling and bending, but the doctor thought she should be able to

8  do these activities at least occasionally.  (Id. at 326.)  The physician thought plaintiff would

9  benefit from physical therapy and weight loss.[9]  (Id. at 326.)  At the time of this exam, plaintiff

10  was five feet, five inches and 200 pounds.  (Id. at 324.)  Dr. Turkot also noted that plaintiff used

11  a cane but that it was not necessary and she should be able to ambulate without assistance.  (Id. at

12  326.)  Plaintiff was found to be able to stand and walk six hours in a work day, sit for eight

13  hours, lift and carry at least 15-25 pounds, could stoop and climb without limitation, could

14  occasionally crouch, kneel and bend, and had no manipulative limitations.  (Id. at 326-27.)

15          The ALJ also relied on the opinion of Dr. Skaff, a treating neurologist, who found

16  on July 23, 2004, that plaintiff could do sedentary work.  (Tr. at 18, 198.)   This doctor noted that

17  plaintiff was using a cane at the exam but wondered whether she needed one.  (Id. at 198.)

18          On March 31, 2004, Dr. Skaff conducted a neurological consultation wherein he

19  diagnosed chronic low back pain, likely muscular in origin, burning dysesthesias in the right leg,

20  fibromyalgia, hypothyroidism, morbid obesity, and chronic insomnia.  (Id. at 242.)  He opined

21  that plaintiff's pain in the low back and thighs was muscular but that there could be sensory

22

23          [9]  The court is puzzled by plaintiff's failure to raise any issues with respect to an obesity
   analysis.  While obesity is no longer a grounds for disability in a listing, it should be analyzed at
24  the various steps of the sequential analysis as it affects other maladies.  However, while at the
   administrative level, the disability finding process is non-adversarial, Reed v. Massanari, 270
25  F.3d 838, 841 (9th Cir. 2001), such is not the case at the district court level.  The undersigned
   will not raise theories on his own, and will presume that the medical personnel did take obesity
26  into account in determining the residual functional capacity of plaintiff.

9

1   radiculopathy in the right lower leg.  He stated, "her chronic myalgias are likely both attributable

2   to and exacerbated by poor physical conditioning and chronic insomnia."  (Id. at 242.)  He found

3   normal range of motion in the lower back, although plaintiff demonstrated it slowly.  (Id. at 241.)

4   There was no tenderness of the spine.  (Id.)  He recommended an MRI, lab tests regarding

5   hypothyroidism, aerobic exercise, antidepressant for help with sleep and chronic pain,

6   nonsteroidal anti-inflammatories, occasional narcotics for pain, particularly at night, cognitive

7   behavioral psychotherapy for sleep and pain issues, and referral to a chronic pain treatment center

8   if the other recommendations do not work.  (Id. at 242-43.)

9          Plaintiff reported to Dr. Skaff at this time that she did not feel numbness, tingling

10  or weakness in the extremities, which contradicts Dr. Hicks' recommendation that plaintiff be

11  precluded from manipulative functions.  (Tr. at 239.)  She also reported that leg exercises helped

12  as did massage during physical therapy.  (Id. at 240.)

13          Dr. Skaff ordered a CT scan of the lumbar spine which showed on June 2, 2004:

14          moderate canal stenosis at L4-5 secondary to a moderately sized
           broad based bulge, moderate ligamentum flavum buckling and
15          moderate to marked facet arthropathy.  Facet disease causes
           exuberant bilateral subchondral cyst formation and mild bilateral
16          recess stenosis, left greater than right.  A mild broad based L4-5
           bulge causes mild bilateral neural foraminal encroachment.

17

18  (Id. at 232, 221.)  At L3-4 there was bulging and facet arthropathy which contributed to minimal

19  acquired canal stenosis.  At L5-S1 there was facet disease, greater on the right.  (Id. at 232.)  This

20  neurologist recommended conservative treatment which included physical therapy, exercise,

21  weight loss, and non-steroidal anti-inflammatory drugs.  (Id. at 232, 221.)

22          On May 13, 2004, an MRI of the lumbar spine showed mild narrowing of the

23  central canal at L3-4, pursuant to disc bulging as well as some hypertrophic change of the

24  ligamentum flavum.  (Id. at 236.)  At L4-5, there was moderate narrowing of the central canal

25  from disc bulging and facet arthropathy with hypertrophic ligamentum flavum.  At L3-4, L4-5

26  and L5-S1, there was disc material bulging into the exit foramina.  (Id.)

1       The ALJ further placed weight on the DDS opinion which found that plaintiff

2 could lift ten pounds occasionally and less than ten pounds frequently, sit for six hours, stand

3 and/or walk two hours in a work day, could occasionally climb ramps, stairs and ladders, but had

4 no limits on ropes and scaffolds, could occasionally stoop, kneel, crouch, and crawl, and had no

5 other limitations.  (Id. at 189-93.)  This report was based on Dr. Hicks' and Dr. Skaff's July,

6 2004 opinions that plaintiff could do sedentary work; however the DDS doctor placed more

7 weight on Dr. Skaff's opinion because he was a specialist, and wrote very detailed explanations

8 based on his physical exam.  (Id. at 194.)

9       The court finds that the ALJ gave specific and legitimate reasons for rejecting Dr.

10 Hicks' limitations, and properly relied on substantial evidence in the record that was before him.

11       B.  Whether the ALJ Erred in Failing to Consider Plaintiff's Mental and Physical Non-

12 Exertional Impairments

13       Plaintiff next asserts that the ALJ failed to consider her statements regarding pain

14 and its effect on her functional limitations.  She states there is no evidence to support the ALJ's

15 conclusion that her testimony was not credible or that her daily activity of watching television

16 equates to an ability to do substantial gainful activity.

17       The ALJ determines whether a disability applicant is credible, and the court defers

18 to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

19 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

20 credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

21 Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

22 supported by "a specific, cogent reason for the disbelief").

23       In evaluating whether subjective complaints are credible, the ALJ should first

24 consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

25 F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible

26 solely because objective medical evidence does not quantify them.  Id. at 345-46.  If the record

11

1   contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ

2   then considers the nature of the alleged symptoms, including aggravating factors, medication,

3   treatment, and functional restrictions.  See id. at 345-47.  The ALJ also may consider the

4   applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

5   inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

6   and (3) daily activities.[10]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally

7   SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician

8   and third party testimony about nature, severity, and effect of symptoms, and inconsistencies

9   between testimony and conduct, may also be relevant.  Light v. Social Security Administration,

10  119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations,

11  see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for

12  medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent

13  affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

14  must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595,

15  599 (9th Cir. 1999).

16          Here, the ALJ reviewed all the reasons he thought plaintiff's complaints of pain

17  were not credible.  First, he noted that plaintiff's statements were not consistent with "the limited

18  objective findings, the conservative treatment received, and the course of her condition."  (Tr. at

19  18.)  Plaintiff did not follow the recommended physical therapy and was not compliant during

20  her exam with Dr. Turkot.  (Id.)  Plaintiff's daily activities reflected multiple sedentary tasks,

21  such as watching television, folding clothes, cooking and shopping.  (Id. at 19.)  Finally, the ALJ

22  noted that despite plaintiff's complaints of severe side effects from medication, such side effects

23

24          [10]  Daily activities which consume a substantial part of an applicants day are relevant.
     "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
     activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
25   any way detract from her credibility as to her overall disability.  One does not need to be utterly
     incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
26   (quotation and citation omitted).

1  were not included in the record.  (Id.)

2        The ALJ's reasoning is supported by the record.  During Dr. Turkot's exam,

3  plaintiff reported that she does her own cooking, dishes, grocery shopping, but does not do

4  mopping, vacuuming, sweeping or laundry.  (Id. at 322.)  Dr. Turkot took note of the many

5  narcotic and/or addictive drugs plaintiff was taking, including morphine, diazepam, Vicodin, and

6  periodic Demerol injections, but she did not receive any epidural steroid injections which would

7  normally be recommended for chronic back pain of this type.  (Id. at 321.)  Further, although

8  narcotics were prescribed for only occasional use, plaintiff was taking them three times a day

9  along with other addictive medications, but was neglecting other important medications.  (Id. at

10  326.)  Dr. Turkot also noted that plaintiff was not compliant in taking medications for

11  hypertension, hypothyroidism or acid reflux as prescribed.  (Id. at 323.)  Although plaintiff used a

12  cane, Dr. Turkot stated that one was not needed nor prescribed, and that plaintiff was able to sit

13  during the history portion, get onto the exam table and remove her shoes without trouble.  (Id. at

14  324, 326.)  Her opinion was that plaintiff should be able to ambulate without assistance.  (Id. at

15  326.)  Plaintiff did have a limp in her right lower extremity, but was uncooperative during the

16  exam, refusing to do any squatting, or check her dorsolumbar spine, and gave a very poor effort.

17  (Id. at 324, 325.)

18        Furthermore, the degree of pain alleged is out of proportion to the objective

19  evidence.  The MRI showed only mild to moderate narrowing of the central canal and only a disc

20  bulge, but no herniation.  (Id. at 236.)  The CT scan also reflected only moderate canal stenosis,

21  moderate ligamentum flavum buckling and moderate to marked facet arthropathy.  The disc

22  bulge was described as only mild.  (Id. at 232, 221.)  There was only minimal acquired canal

23  stenosis.  (Id. at 232.)  As a result of these mild findings, the neurologist recommended a

24  specified regimen of conservative treatment only, none of which plaintiff followed.  (Id. at 221.)

25        All of these records indicate that plaintiff was not controlling many of her medical

26  problems with recommended treatments and medication as prescribed.  She was not taking any

1  anti-inflammatories, not getting steroid epidural injections, not getting physical therapy[11] or

2  exercise, and not losing weight as advised.  (Tr. at 156, 212, 221, 326.)  Moreover, plaintiff's

3  allegations of side effects from narcotic medications would be eliminated if she took anti-

4  inflammatories and non-narcotic pain relievers as recommended.  In addition to these treatments

5  for her back problems, plaintiff was not attempting to control her other medical problems, such

6  as hypertension and hypothyroidism by taking the prescribed medication on a regular basis.  A

7  condition which can be controlled or corrected by medication is not disabling.  See Montijo v.

8  Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with

9  medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib

10  condition controlled with antibiotics not considered disabling).

11          The ALJ properly analyzed the evidence relating to plaintiff's lumbar pain in

12  relation to the appropriate factors required by the Bunnell line of cases.

13          C.  New Evidence

14          Plaintiff has submitted to the court various medical records dated between August

15  25, 2004 and May 22, 2007.[12]  "Social Security claimants usually have one opportunity to prove

16  their disability.  If this were not the case, the administrative proceedings would become an

17  unending merry-go-round."  Nehlig v. Commissioner of Social Security Admin., 40 F. Supp. 2d

18  841, 848 (E.D.Tex. 1999).  A federal district court nevertheless should remand a case to the

19  Commissioner to consider material new evidence if good cause exists for its absence from the

20  _____

21          [11]  On appeal, plaintiff's counsel argued that plaintiff had sought physical therapy, and
enclosed the therapist's evaluation, dated August 16, 2004.  Although the physical therapy plan

22  was recommended twice a week for three to four weeks, there is no indication that plaintiff
followed through after this visit.  Her handwritten note states only that she tried, but that the pain

23  was so bad that her therapist agreed that plaintiff "should leave it alone."  Plaintiff states she did
not continue the therapy because the pain was so bad.  (Tr. at 507, 518.)

24

25          [12]  The more recent evidence postdating May 22, 2007, submitted by plaintiff in response
to this court's February 28, 2008 order, will not be considered.  The court was unaware at the
time of the order that such evidence was irrelevant as plaintiff had already been found disabled as

26  of March 24, 2006.

14

1    prior record.  42 U.S.C. § 405(g); <u>Burton v. Heckler</u>, 724 F.2d 1415, 1417 (9th Cir. 1984).

2           New evidence is "material," if the court finds a reasonable possibility that

3    considering the evidence would have changed the disability determination.[13]  <u>See</u> <u>Booz v.</u>

4    <u>Secretary of Health and Human Services</u>, 734 F.2d 1378, 1380-1381 (9th Cir. 1984).  Unless it is

5    probative of plaintiff's condition at or before the disability hearing, new evidence is not material.

6    <u>See</u> 42 U.S.C. § 416(i)(2)(G); <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d

7    509, 511-12 (9th Cir. 1987) (holding that new evidence was not material because it related to a

8    medical condition not significantly at issue at time of hearing).[14]

9           "Good cause" requires more than "simply . . . obtaining a more favorable report

10   from an expert witness once [a] claim is denied.  The claimant must establish good cause for not

11   seeking the expert's opinion prior to the denial. . . ."  <u>Clem v. Sullivan</u>, 894 F.2d 328, 332 (9th

12   Cir. 1990) (citing <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir.1985)).  For example, good

13   cause exists if new evidence earlier was unavailable, in the sense that it could not have been

14   obtained earlier.  <u>Embrey v. Bowen</u>, 849 F.2d 418, 423-24 (9th Cir.1988).

15          The first two documents predate the ALJ's decision, but were previously

16   submitted to the Appeals Council by plaintiff's attorney, and therefore they are already part of the

17   record, and have been considered by this court.  (Tr. at 507, 519.)

18          The remainder of the records post-date the Appeals Council decision, and are

19   considered new evidence.  They are dated between June 19, 2006, and May 22, 2007.  However,

20   as plaintiff was found disabled as of March 24, 2006, this new evidence does not show that

21   plaintiff was disabled prior to that date.  It merely is cumulative of the records already in the file.

22   \\\\\

---

23
24          [13]  Evidence is not deemed immaterial solely by the date it was created.  Later dated
     evidence may have substantive impact on a preceding period.

25          [14]  When new evidence reflects plaintiff's current condition but is not probative of a
     condition at the time of the initial determination, the correct procedure is to reapply for benefits.
26   <u>See</u> <u>Ward v. Schweiker</u>,  686 F.2d 762, 765-66 (9th Cir.1982).

1    Very important in the analysis herein is the fact that plaintiff received disability

2    benefits with a decision issued March 23, 2006.  The question to be asked is what was it about

3    plaintiff's condition, if anything, which changed from an ability to perform work to an

4    assessment that none could be performed.  Generally, the undesigned will look for the presence

5    or absence of some traumatic event, or the presence or absence of a discussion in the records

6    which showed a bad condition having evolved to a disabling one.  For example, if a diagnostic

7    test reveled for the first time a herniated disc, where only mild to moderate bulges had been noted

8    previously, one could conclude that the condition sufficiently worsened at or about the time of

9    the diagnostic test.  On the other hand, a lack of any evidence of a worsening condition or

10   traumatic event tends to show that the condition for which a disability was eventually found

11   existed for some time in the past in its later found severity.

12        The records closest in time to this date do indicate that plaintiff's condition may

13   have worsened around this time.  For example, although properly rejected by the ALJ, Dr. Hicks

14   noted that on January 5, 2006 plaintiff complained that her back pain was not improving, but was

15   getting worse.  (Tr. at 508.)  On February 3, 2006, Dr. Miles noted that in the past, plaintiff's

16   pain radiated only down her right leg, but on this date it was going down the left leg also.  (Id. at

17   509.)  These records indicate that a bad condition had sufficiently worsened, i.e., plaintiff was

18   not completely disabled before that time.  Another record which post-dates the March, 2006

19   disability date by several months and which has been submitted as new evidence, also sheds light

20   on the possible reason for this disability date.  Dr. Hicks stated in this December 14, 2006 report,

21   "I deemed her unable to work months ago due to the level of her pain and the level of medication

22   required to control her symptoms.  It is not safe for her to work while taking the level of

23   medication that she requires.  Considering the level of her pain she will miss many days of work

24   and will be late for work due to the pain."  He added, "[t]here is not question in my clinical

25   judgment that she is now totally disabled and has been since I initially deemed her disabled."

26   Pl.'s Mot., Ex. 1, at 36.  Again, the court interprets this latter statement (in the context of all the

16

1   other evidence) that plaintiff's condition had worsened, in fact.

2          These records tend to support a disability beginning on March 24, 2006; however,

3   there is no substantial evidence to support a disability prior to that date.  Plaintiff has the burden

4   to come forward with evidence to support a prior disability and she has not met her burden.

5   Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  Plaintiff's motion to remand

6   on this basis is therefore denied.

7   CONCLUSION

8          The court finds the ALJ's assessment is fully supported by substantial evidence in

9   the record and based on the proper legal standards.  Accordingly, plaintiff's Motion for Summary

10  Judgment or Remand is DENIED, the Commissioner's Cross Motion for Summary Judgment is

11  GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

12  DATED:   06/11/08

13                                                    /s/ Gregory G. Hollows

14                                                    _____
                                                      GREGORY G. HOLLOWS
15  GGH/076                                           U.S. MAGISTRATE JUDGE
    Coulbourn0095.ss.wpd

16

17

18

19

20

21

22

23

24

25

26

17